## In re Avihail KOCHLANI, Respondent

File A24 911 110 - Los Angeles

*Decided as amended April 2, 2007*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The offense of trafficking in counterfeit goods or services in violation of 18 U.S.C. § 2320 (2000) is a crime involving moral turpitude.

FOR RESPONDENT: Robert G. Berke, Esquire, Los Angeles, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: JoAnn M. Platel, Assistant Chief Counsel

BEFORE: Board Panel: FILPPU, COLE, and PAULEY, Board Members.

COLE, Board Member:

In a decision dated April 7, 2004, an Immigration Judge terminated removal proceedings against the respondent. The Department of Homeland Security ("DHS") has appealed from that decision. The appeal will be sustained, and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent, a native and citizen of Israel and a lawful permanent resident of the United States, has two criminal convictions that are of relevance to the present proceedings: (1) an October 1987 conviction in California Superior Court for the offense of grand theft in violation of section 487.1 of the California Penal Code; and (2) a December 2001 conviction in a United States District Court in California for the offense of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320 (2000).[2] On the basis of these convictions, the DHS charged the respondent with

---

[1] On our own motion, we amend the November 23, 2005, order in this case. The amended order makes editorial changes consistent with our designation of the case as a precedent.

[2] With respect to the Federal conviction, the respondent was prosecuted as a principal based on the fact that he aided and abetted trafficking in counterfeit goods and caused acts constituting the offense of trafficking in counterfeit goods to be done. *See* 18 U.S.C. § 2 (2000).

removability from the United States as, inter alia, an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. *See* section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii) (2000). The Immigration Judge terminated the removal proceedings, however, based on her conclusion that the offense of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320 was not a crime involving moral turpitude that could support a charge under section 237(a)(2)(A)(ii) of the Act.[3]

## II. ANALYSIS

As a threshold matter, there is no dispute that the California offense of grand theft is a crime involving moral turpitude. Crimes involving theft or larceny have always been held to involve moral turpitude. *United States v. Esparza-Ponce*, 193 F.3d 1133, 1136-37 (9th Cir. 1999); *Matter of De La Nues*, 18 I&N Dec. 140, 145 (BIA 1981). Thus, the sole question to be resolved on appeal is whether the Federal offense of trafficking in counterfeit goods is a crime involving moral turpitude.

We have held that a criminal offense involves "moral turpitude" if the relevant statute defines the offense in such a manner that it necessarily entails conduct on the part of the offender that is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general. *Matter of Torres-Varela*, 23 I&N Dec. 78, 83 (BIA 2001). Neither the seriousness of a criminal offense nor the severity of the sentence imposed is determinative of whether a crime involves moral turpitude. *Id.* at 84.

As previously noted, the respondent was convicted of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320, which provides in pertinent part as follows:

> Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services shall . . . be fined not more than $2,000,000 or imprisoned not more than 10 years, or both . . . .

18 U.S.C. § 2320(a). The phrase "counterfeit mark" is defined as

> a spurious mark—
>   (i) that is used in connection with trafficking in goods or services;

---

[3] In terminating the removal proceedings, the Immigration Judge also concluded that the respondent was not convicted of an aggravated felony as charged by the DHS. The present appeal does not challenge the Immigration Judge's decision with respect to the validity of the aggravated felony charge, so that issue is not before us.

      (ii) that is identical with, or substantially indistinguishable from, a mark registered for those goods or services on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered; and
      (iii) the use of which is likely to cause confusion, to cause mistake, or to deceive.

18 U.S.C. § 2320(e)(1)(A).[4]  Thus, to have convicted the respondent under 18 U.S.C. § 2320, the Federal prosecutor necessarily proved beyond a reasonable doubt that he intentionally trafficked or attempted to traffic in goods or services and that in the course of doing so, he knowingly used a spurious trademark that was likely to confuse or deceive others.

    In concluding that trafficking in counterfeit goods does not necessarily involve moral turpitude, the Immigration Judge observed that an individual may be convicted under 18 U.S.C. § 2320(a) even if the direct purchaser of the merchandise was not, in fact, confused or deceived as to the authenticity of the goods at the time of purchase.  Indeed, to obtain a conviction under 18 U.S.C. § 2320(a), the prosecutor need not prove either that the individual knew that trafficking in counterfeit goods was criminal or that the trafficker specifically intended to defraud the direct purchaser or potential purchaser of the goods being trafficked.  *United States v. Gantos*, 817 F.2d 41 (8th Cir. 1987); *United States v. Baker*, 807 F.2d 427 (5th Cir. 1986).  Yet, in our view, this fact does not support the Immigration Judge's apparent conclusion that trafficking in counterfeit goods may be committed by morally neutral means.  On the contrary, courts espousing the notion that 18 U.S.C. § 2320(a) may be violated without proof of a specific intent to deceive the direct purchaser have taken pains to emphasize that the offender's knowing expropriation and use of the owner's trademark must nonetheless be likely to confuse or deceive the public at large, with significant adverse consequences, both for those potential consumers who are deceived and for the owner of the mark, who must bear the costs associated with the dilution of the mark's value in the public's estimation.  *See, e.g., United States v. Foote*, 413 F.3d 1240, 1245-46 (l0th Cir. 2005); *United States v. Hon*, 904 F.2d 803, 806-07 (2d Cir. 1990); *United States v. Yamin*, 868 F.2d 130, 132-33 (5th Cir. 1989); *United States v. Gantos*, *supra*, at 43; *United States v. Torkington*, 812 F.2d 1347, 1352 (11th Cir. 1987).

    It is true that crimes that have a specific intent to defraud as an element have always been found to involve moral turpitude, but we have also found

---

[4]  The phrase "counterfeit mark" is defined in the alternative as "a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of the Lanham Act are made available by reason of section 220506 of title 36." 18 U.S.C.A. § 2320(e)(1)(B) (West Supp. 2006).  This portion of the "counterfeit mark" definition pertains solely to the exclusive rights of the United States Olympic Committee to use certain names and emblems associated with the Olympic Games, the Paralympic Games, and the Pan-American Games and is of no relevance to these proceedings.

that certain crimes are inherently fraudulent and involve moral turpitude even though they can be committed without a specific intent to defraud. *Matter of Tejwani*, 24 I&N Dec. 97, 98 (BIA 2007) (citing *Carty v. Ashcroft*, 395 F.3d 1081 (9th Cir. 2005); *Matter of Flores*, 17 I&N Dec. 225 (BIA 1980)). For instance, in *Matter of Flores*, *supra*, we concluded that moral turpitude inhered in the crime of uttering or selling false or counterfeit paper relating to the registry of aliens in violation of 18 U.S.C. § 1426(b), even though the statute did not require proof of a specific intent to defraud. In reaching this conclusion, we noted that 18 U.S.C. § 1426(b) requires knowledge on the part of the offender that the documents being sold were counterfeit, and we found that the act of selling counterfeit documents, like the act of counterfeiting currency, involved deliberate deception and interfered with the Government's ability to function. *Id.* at 228-30.

The offense of trafficking in counterfeit goods or services, as defined in 18 U.S.C. § 2320, is in many ways analogous to the offense of uttering or selling false or counterfeit papers relating to the registry of aliens under 18 U.S.C. § 1426(b). First, both crimes involve traffic in counterfeit or fraudulent items or objects. Second, both crimes require proof of an intent to traffic and knowledge that the items or objects are counterfeit. And third, both crimes result in significant societal harm. As Congress made clear when enacting 18 U.S.C. § 2320, "Trademark counterfeiting . . . defrauds purchasers, who pay for brand-name quality and take home only a fake," but it also exploits mark holders, since "counterfeiters [can earn] enormous profits . . . by capitalizing on the reputations, development costs, and advertising efforts of honest manufacturers at little expense to themselves." S. Rep. No. 98-526, at 4-5 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3627, 3630-31; *see also United States v. Hon*, *supra*, at 806.

Trafficking in counterfeit goods is "tantamount to commercial forgery" and involves the theft of someone else's property in the form of a trademark, even if it does not involve deceiving the purchasers of the counterfeit goods and services. David J. Goldstone & Peter J. Toren, *The Criminalization of Trademark Counterfeiting*, 31 Conn. L. Rev. 1, 4 (Fall 1998). Indeed, trafficking in counterfeit goods is inherently immoral because it entails dishonest dealing and deliberate exploitation of the public and the mark owner. *Id.* at 22 (noting that "[u]sing the good name of another without authorization to bolster the value of one's own work is a moral wrong that violates social norms"). Moreover, we deem it significant that for purposes of Federal criminal sentencing, trafficking in counterfeit goods is classified as a crime involving theft or fraud. *See* U.S. Sentencing Guidelines Manual § 2B5.3 & cmt. background (2006) ("This guideline treats copyright and trademark violations much like theft and fraud.").

## III.  CONCLUSION

In conclusion, we agree with the DHS that the Immigration Judge erred when she concluded that the offense of trafficking in counterfeit goods or services under 18 U.S.C. § 2320 does not qualify as a crime involving moral turpitude under the immigration laws.  Because we find that the respondent's removability under section 237(a)(2)(A)(ii) of the Act has been established, we will sustain the DHS's appeal and remand the record to the Immigration Judge for further proceedings to consider whether the respondent is eligible for any relief from removal.

**ORDER:**    The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:**  The decision of the Immigration Judge is vacated in part, and the record is remanded for further proceedings consistent with the foregoing opinion.