**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3734
_____

MAXIM DOLGOSHEEV,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A74-161-981)
Immigration Judge:  Honorable Charles A. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 20, 2011

Before: FUENTES, VANASKIE and ROTH, <u>Circuit</u>  <u>Judges</u>

(Opinion filed : July 8, 2011)
_____

OPINION
_____

PER CURIAM

        Maxim Dolgosheev, a native and citizen of Ukraine, entered the United States as a

teenager in 1995 and became a lawful permanent resident in 1997.  In 2005, on his guilty

plea, he was convicted of (1) conspiracy to engage in trademark counterfeiting and

copyright infringement in violation of 18 U.S.C. § 371; (2) trademark counterfeiting in

violation of 18 U.S.C. § 2320(a); and (3) two counts of copyright infringement in violation of 17 U.S.C. § 506(a)(1) and 18 U.S.C. § 2319(b)(1). The convictions stemmed from Dolgosheev's involvement in producing and selling counterfeit Microsoft software from approximately June 1998 through July 2001.

The Government subsequently charged Dolgosheev with removability, citing his crimes and contending he was removable on several grounds, including having been convicted of a crime involving moral turpitude ("CIMT"), namely trademark counterfeiting in violation of 18 U.S.C. § 2320(a), committed within five years of the date of admission and for which a sentence of one year or longer may be imposed. Dolgosheev denied the charges of removability and filed a motion to terminate the removal proceedings. The Immigration Judge ("IJ") denied the motion, concluding that Dolgosheev was removable on the CIMT charge. The Board of Immigration Appeals ("BIA") dismissed Dolgosheev's subsequent appeal. Dolgosheev presents a petition for review.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We review questions of law de novo, see Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir. 2001), including the question of what elements of a federal criminal statute implicate moral turpitude, see Knapik v. Ashcroft, 384 F.3d 84, 88 (3d Cir. 2004). However, we "clearly afford Chevron deference to the BIA's definition of 'moral turpitude.'" Id. at 88 n.3. That is, we consider whether the BIA's ruling was based on "a permissible construction of the statute" in light of Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). See id. at 87.

2

Dolgosheev argues that the BIA erred in concluding that he committed a CIMT because the BIA did not conduct the required categorical analysis and because the minimum conduct required for his conviction is not a CIMT. Dolgosheev was convicted of trademark counterfeiting in violation of 18 U.S.C. § 2320(a). The statute provides:

> In general. Whoever[;] intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services, or intentionally traffics or attempts to traffic in labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive, shall, if an individual, be fined not more than $ 2,000,000 or imprisoned not more than 10 years, or both . . . .

18 U.S.C. § 2320(a). The term "counterfeit mark" is defined primarily as follows:

> (A) a spurious mark--
> (i) that is used in connection with trafficking in any goods, services, . . . or packaging of any type or nature;
> (ii) that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office and in use, whether or not the defendant knew such mark was so registered;
> (iii) that is applied to or used in connection with the goods or services for which the mark is registered with the United States Patent and Trademark Office . . .; and
> (iv) the use of which is likely to cause confusion, to cause mistake, or to deceive

18 U.S.C. § 2320(e). (1984).

In Dolgosheev's case, the BIA relied on Matter of Kochlani, 24 I. & N. Dec. 128 (BIA 2007), which held that a violation of 18 U.S.C. § 2320 constitutes a CIMT. Dolgosheev argues that Matter of Kochlani was wrongly decided because its holding that violations of 18 U.S.C. § 2320 are inherently fraudulent is not based on the categorical

3

approach that this Court requires.

Considering this statute in <u>Matter of Kochlani</u>, the BIA identified the hallmarks of a CIMT, specifically, an offense that "necessarily entails conduct . . . that is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general." 24 I. & N. Dec. at 129 (citation omitted). That description is the commonly accepted one that we use. <u>See</u> <u>Jean-Louis v. Attorney Gen. of the United States</u>, 582 F.3d 462, 465-66 (3d Cir. 2009) (citation omitted).

Despite Dolgosheev's argument to the contrary, the approach taken by the BIA tracks the categorical approach that we accept. Under the categorical approach, whether a crime is a CIMT is determined by the criminal statute and the record of conviction. <u>See</u> <u>Partyka v. Attorney Gen. of the United States</u>, 417 F.3d 408, 412 (3d Cir. 2005). As we advise, <u>see</u> <u>id.</u>, the BIA read the applicable statute to ascertain the least culpable conduct necessary to sustain a conviction. The BIA observed that to support a conviction under 18 U.S.C. § 2320, the federal prosecutor must necessarily prove beyond a reasonable doubt that the defendant intentionally trafficked or attempted to traffic in goods or services and, in doing so, knowingly used a spurious trademark that was likely to confuse or deceive others. <u>See</u> <u>Matter of Kochlani</u>, 24 I. & N. Dec. at 130.

Generally, a statute describes a CIMT "'only if all the conduct it prohibits is turpitudinous.'" <u>Partyka</u>, 417 F.3d at 412 (citation omitted). The BIA considered whether this was the case. The BIA rejected an IJ's conclusion that trafficking in counterfeit goods did not necessarily involve moral turpitude because some courts held that § 2320(a) could be violated without proof of specific intent to deceive the purchaser.

4

See Matter of Kochlani, 24 I. & N. Dec. at 130. Dolgosheev renews the point, contending that the BIA came to the wrong conclusion because, according to him, the least culpable conduct under the statute does not involve moral turpitude without the intent to defraud the purchaser. He also focuses on his contention that a conviction does not require that the trafficker knew that trafficking in counterfeit goods was illegal.

However, every conviction requires proof of intentional trafficking (or an attempt to traffic) and knowing use of a counterfeit mark. Furthermore, the BIA noted in Matter of Kochlani that those courts holding that intent to deceive the purchaser is necessary "have taken great pains to emphasize that the offender's knowing expropriation and use of the owner's trademark must nonetheless be likely to confuse or deceive the public at large, with significant adverse consequences, both for potential consumers who are deceived and the owner of the mark." See 24 I. & N. Dec. at 130 (citing cases). The BIA also made analogies to the crime of uttering or selling false or counterfeit papers relating to the registry of aliens, noting the required proof of intent to traffic and knowledge of the counterfeit nature of the objects, as well as the resulting significant societal harm. See id. at 131. Considering Congress's assessment in the legislative history of a § 2320 violation as an act defrauding purchasers and exploiting trademark owners; academics' conclusions that trafficking is tantamount to commercial forgery and a theft of property even if it does not deceive consumers; and a classification of the violation as a crime involving theft or fraud for sentencing purposes, the BIA concluded that the crime was inherently immoral and a CIMT. See id. at 131-32 (citations omitted). Given its reasoning, the BIA's ruling appears to be a permissible construction of the statute. Cf. Briseno-Flores v. Attorney

5

Gen. of the United States, 492 F.3d 226, 228 (3d Cir. 2007) (noting that theft, even petty theft, constitutes a crime of moral turpitude); Jordan v. De George, 341 U.S. 223, 227 (1951) (stating that "fraud has ordinarily been the test to determine whether crimes not of the gravest character involve moral turpitude").

Nonetheless, before we rule, we must consider Dolgosheev's argument that the reasoning of Matter of Kochlani, which equated a violation of 18 U.S.C. § 2320 to a crime of theft or fraud, is incompatible with Dowling v. United States, 473 U.S. 207, 217-18 (1985). After reviewing Dolgosheev's argument as well as the Dowling court's statements and reasoning, we conclude that the interpretation in Dowling of the scope of the terms "theft, conversion, or fraud" in a statutory provision of the National Stolen Property Act, 18 U.S.C. § 2314, is too specific to that provision, see 473 U.S. at 218-26, to be applied to bar the BIA's consideration of trademark counterfeiting as akin to fraud or theft.

Lastly, Dolgosheev argues that the BIA's interpretation was not permissible because the BIA should have taken into account the rule of lenity and ruled that the crime was not a CIMT in light of "Dowling and the fact that the statutes involved do not expressly involve fraud." Petitioner's Brief 21. Dolgosheev invokes "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987). This rule of construction, traditionally termed the rule of lenity in the criminal, but not immigration, context, may be applied as a canon of last resort to determine Congressional intent on an ambiguous issue. See Valansi v. Ashcroft, 278 F.3d 203, 214 (3d Cir. 2002). However, the principle

6

did not require the BIA to come to a conclusion different from the one it arrived at after considering the hallmarks of a CIMT and the characteristics of the crime at issue, including the harm it causes.

In short, we conclude that the BIA's interpretation was based on a permissible construction of the statute. Accordingly, we deny Dolgosheev's petition for review.