RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SALVATORE LOVANO,

                            *Petitioner*,

    *v.*

LORETTA LYNCH, Attorney General,

                            *Respondent*.

No. 16-3245

---

Upon Petition for Review from the
Board of Immigration Appeals.
No. A 031 242 252.

Decided and Filed: January 20, 2017

Before: GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Margaret Wong, MARGARET WONG & ASSOCIATES LLC, Cleveland, Ohio, for Petitioner. Jesse M. Bless, Liza S. Murcia, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. Salvatore Lovano is a native and citizen of Canada who was admitted to the United States as a lawful permanent resident (LPR) in 1973. In 2015, an Immigration Judge (IJ) ordered that Lovano be removed from the United States for violating 8 U.S.C. § 1227(a)(2)(A)(ii), a statute that authorizes the deportation of "[a]ny alien . . .

convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." The Board of Immigration Appeals (BIA) affirmed the IJ's order. Lovano now petitions for review of the BIA's opinion, arguing that his 2012 conviction for aggravated assault in Ohio is not a crime involving moral turpitude. For the reasons set forth below, we **DENY** Lovano's petition for review.

## I. BACKGROUND

In 1993, twenty years after Lovano was admitted to the United States as an LPR, he was convicted in Cleveland, Ohio of both attempting to pass bad checks, in violation of Ohio Revised Code §§ 2923.02 and 2913.11, and theft, in violation of Ohio Revised Code § 2913.02. What was then known as the Immigration and Naturalization Service sought to remove Lovano on the basis that he violated 8 U.S.C. § 1227(a)(2)(A)(ii). The following year, however, Lovano was granted a waiver of deportability under a now-repealed section of the Immigration and Nationality Act (INA). 8 U.S.C. § 1182(c) (repealed).

Lovano was subsequently convicted in 2012 in Cleveland of aggravated assault, in violation of Ohio Revised Code § 2903.12. The Department of Homeland Security (DHS) issued Lovano a Notice to Appear (NTA) the following year. Lovano was once again charged with violating 8 U.S.C. § 1227(a)(2)(A)(ii). In particular, DHS claimed that Lovano's 1993 and 2012 convictions were all for crimes involving moral turpitude.

A series of protracted immigration proceedings, a detailed recounting of which is unnecessary to our decision, ensued from 2013 to 2015. After the dust settled, the BIA affirmed an IJ's ruling that Lovano's prior convictions for attempting to pass bad checks and for aggravated assault were for crimes involving moral turpitude. (The IJ concluded that Lovano's conviction for theft was not for a crime involving moral turpitude for reasons neither relevant nor contested here.) In its order, the BIA concluded that Lovano's aggravated-assault conviction was for a crime involving moral turpitude because it "require[d] proof of intent and the causing of serious physical harm." Lovano now petitions for review of the BIA's decision, his sole argument being that his conviction for aggravated assault in Ohio is not for a crime involving moral turpitude.

## II.  DISCUSSION

### A.  Jurisdiction

Although the INA generally deprives us of jurisdiction to review removal orders relating to aliens deemed removable for having committed a crime involving moral turpitude, we nonetheless retain "limited jurisdiction to review questions of law and constitutional claims arising from such orders."  *Ruiz-Lopez v. Holder*, 682 F.3d 513, 516 (6th Cir. 2012) (citing 8 U.S.C. § 1252(a)(2)(D)).  The only issue raised in Lovano's petition is that aggravated assault in Ohio is not a crime involving moral turpitude within the meaning of 8 U.S.C. § 1227(a)(2)(A)(ii), and thus may not serve as a basis for his removal.  Being purely a question of law, we have jurisdiction over Lovano's petition.

### B.  Standard of review

"The BIA's construction of ambiguous statutory provisions—such as the term 'crime involving moral turpitude'—is generally entitled to *Chevron* deference."  *Reyes v. Lynch*, 835 F.3d 556, 559 (6th Cir. 2016) (quoting *Ruiz-Lopez*, 682 F.3d at 516).  Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we must uphold the BIA's interpretation of an ambiguous federal statute unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute."  *Id.* at 843-44.  The BIA's interpretation of a state criminal statute, on the other hand, is not entitled to deference and is reviewed de novo. *Reyes*, 835 F.3d at 559.

### C.  Lovano's aggravated-assault conviction

Lovano has not disputed that his conviction for attempting to pass bad checks is a crime involving moral turpitude.  The single and dispositive issue in his petition, then, is whether aggravated assault in Ohio is such a crime.  If it is, then Lovano has been "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct," making him subject to removal.  *See* 8 U.S.C. § 1227(a)(2)(A)(ii).

"The term 'crime involving moral turpitude' is not defined in the INA or by agency regulations."  *Reyes*, 835 F.3d at 560 (quoting *Yeremin v. Holder*, 738 F.3d 708, 714 (6th Cir.

2013)). But the BIA has held that "a criminal offense involves 'moral turpitude' if the relevant statute defines the offense in such a manner that it necessarily entails conduct on the part of the offender that is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general." *In re Kochlani*, 24 I. & N. Dec. 128, 129 (BIA 2007). The BIA has also held that "an offense must have two essential elements to constitute a crime involving moral turpitude: a culpable mental state and reprehensible conduct." *Matter of Medina*, 26 I. & N. Dec. 79, 82 (BIA 2013). Moreover, "[c]rimes committed intentionally or knowingly have historically been found to involve moral turpitude." *In re Solon*, 24 I. & N. Dec. 239, 240 (BIA 2007).

With regard to statutes prohibiting assault and battery, the BIA has observed that assault "may or may not involve moral turpitude," *In re Fualaau*, 21 I. & N. Dec. 475, 477 (BIA 1996), and that the inquiry must focus on "an assessment of both the state of mind and the level of harm required to complete the offense," *Solon*, 24 I. & N. Dec. at 242. Simple assault and battery—which typically has elements of general intent and a mere touching—is usually not considered a crime involving moral turpitude. *Id.* at 241-42. On the other hand, assault-and-battery offenses "that necessarily involve[] the *intentional* infliction of *serious* bodily injury . . . have been held to involve moral turpitude because such intentionally injurious conduct reflects a level of immorality that is greater than that associated with a simple offensive touching." *In re Sanudo*, 23 I. & N. Dec. 968, 971 (BIA 2006) (emphasis in original).

We apply what has become known as the "categorical approach" when determining whether a state assault-and-battery statute fits the above description of a crime involving moral turpitude. Pursuant to the categorical approach, "we consider not whether the actual conduct constitutes a crime involving moral turpitude, but whether the full range of conduct encompassed by the statute constitutes a crime of moral turpitude." *Serrato-Soto v. Holder*, 570 F.3d 686, 689 (6th Cir. 2009) (internal quotation marks omitted). We must focus solely on the elements of the statute at issue, and should generally refrain from consideration of the facts underlying the conviction. *See id.* at 690. Consideration of the facts, under what is generally known as the "modified categorical approach," is appropriate only if the statute is divisible (that is, effectively lists different crimes), and then solely for the limited purpose of determining which of those

crimes the defendant was found guilty of committing. *See, e.g.*, *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013) (describing the operation of the modified categorical approach in the context of a burglary statute).

The parties agree that the statute at issue in this petition, Ohio Revised Code § 2903.12, is indivisible and is subject only to the categorical approach. Ohio Revised Code § 2903.12(A)(1) provides as follows:

> No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly . . . [c]ause serious physical harm to another or to another's unborn[.]

The Supreme Court of Ohio has observed that a conviction under this statute requires a showing that the defendant knowingly caused serious physical harm. *State v. Brown*, 895 N.E.2d 149, 154-55 (Ohio 2008). "Serious physical harm" is defined by the Ohio Revised Code as including, among other types of serious physical injury, "any physical harm that carries a substantial risk of death." Ohio Rev. Code § 2901.01(A)(5)(b). By its very terms, Ohio Revised Code § 2903.12(A)(1) is an "assault and battery offense[] that necessarily involve[s] the *intentional* infliction of *serious* bodily injury." *See Sanudo*, 23 I. & N. Dec. at 971 (emphasis in original). It consequently is a crime involving moral turpitude.

Lovano advances three principal arguments against this conclusion. First, Lovano attempts to draw a distinction between "serious physical *harm*" and "serious physical *injury*," arguing that "[p]hysical harm is less severe than physical injury and . . . this is a distinction that makes a difference." But Lovano cites no authority in support of this argument, instead referring to a section of the Ohio Revised Code that does not appear to exist. Our review of the Ohio Revised Code has failed to reveal any definition of "physical injury," let alone any indication that Ohio law treats "harm" and "injury" differently in any way. Because the statutory definition of "serious physical harm" provided at Ohio Revised Code § 2901.01(A)(5)(b) appears to us indistinguishable from serious physical injury, we reject Lovano's argument.

Second, Lovano argues that the statute's *mens rea* requirement of "knowingly" is an insufficiently culpable mental state to trigger a finding of moral turpitude. But crimes have

historically involved moral turpitude if they have a *mens rea* element of knowledge.  *Solon*, 24 I. & N. Dec. at 240.  The BIA has in fact concluded that even the lower mental state of "recklessness" is sufficient when coupled with, for example, a substantial risk of imminent death.  *See Matter of Leal*, 26 I. & N. Dec. 20, 24 (BIA 2012).  If recklessness can constitute a sufficiently high mental state, then knowledge must *a fortiori* be considered sufficient.  We accordingly decline to accept Lovano's argument that "knowingly" is an insufficient mental state to trigger a finding of moral turpitude.

Lovano's third and final argument is that the presence of the "provocation" language in the aggravated-assault statute should foreclose the conclusion that a violation of the statute is categorically a crime involving moral turpitude.  He contends that we should consider the fact that the statute necessarily entails provocation and thereby mitigates the assault from a more serious felony to the fourth degree felony at issue here.

By Lovano's own admission, however, the provocation portion of the statute is not an element of the crime.  It simply has the effect of mitigating a more serious aggravated assault to a lesser degree of aggravated assault, just as a provocation can mitigate murder to a lesser degree of homicide, such as manslaughter.  Contrary to Lovano's assertions, provocation does not have any effect on either of the two elements that the government must prove in order to obtain a conviction: (1) to *knowingly cause* (2) *serious physical harm* to another person.  And these are the only two elements that the BIA has considered relevant in its interpretation of the phrase "crime involving moral turpitude" in the context of assault-and-battery statutes.  *See Sanudo*, 23 I. & N. Dec. at 971.  Just because Lovano was provoked, in other words, does not negate either the *mens rea* or the serious-injury elements of the offense of aggravated assault.

In sum, Lovano has been "convicted of two . . . crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct."  *See* 8 U.S.C. § 1227(a)(2)(A)(ii).  He is therefore subject to removal.

### III.  CONCLUSION

For all of the reasons set forth above, we **DENY** Lovano's petition for review.