[Cite as *State v. Muhire*, 2022-Ohio-3078.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29164 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-827 |
| | : | |
| JEAN BOSCO MUHIRE | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of September, 2022.

. . . . . . . . . . .

STEPHANIE L. COOK, Atty. Reg. No. 0067101 and ANDREW D. SEXTON, Atty. Reg.
No. 0070892 , Assistant Prosecuting Attorneys, City of Dayton Prosecutor's Office, 335
West Third Street, Room 390, Dayton, Ohio 45402
        Attorneys for Plaintiff-Appellee

MOHAMED AI-HAMDANI, Atty. Reg. No. 0091667, 120 West Second Street, Suite 1650,
Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Jean Bosco Muhire, appeals from a judgment of the Dayton Municipal Court denying his post-sentence motion to withdraw his guilty plea. In support of his appeal, Muhire contends that the trial court should have granted his motion because he had a limited understanding of the English language, which prevented him from entering a knowing, intelligent, and voluntary guilty plea. Muhire also claims that the trial court abused its discretion by failing to appoint an interpreter at his plea hearing. In addition, Muhire contends that his trial counsel provided ineffective assistance by failing to advise him of the potential immigration consequences of his guilty plea. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} Muhire is a refugee who came to the United States from Rwanda in May 2017; his native language is Kinyarwanda. On February 15, 2018, Muhire was charged by complaint with one first-degree-misdemeanor count of domestic violence, one fourth-degree-misdemeanor count of domestic violence, and single first-degree-misdemeanor counts of assault, aggravated menacing, and menacing. Muhire initially pled not guilty to all of the charges at his arraignment, but he later accepted a plea offer requiring him to plead guilty to one count of assault. In exchange for Muhire's guilty plea, the State agreed to amend the first-degree-misdemeanor count of domestic violence to assault and to dismiss all the remaining charges.

{¶ 3} Although Muhire spoke Kinyarwanda, the trial court stamped the arraignment

entry with the phrase: "Order Interpreter – Swahili." Arraignment (Feb. 15, 2018). For unknown reasons, no interpreter, Swahili or otherwise, ever appeared at Muhire's March 8, 2018 plea hearing. During the plea hearing, Muhire did not request an interpreter's assistance nor did he express a lack of understanding as to what the trial court was saying during the hearing. Instead, Muhire entered his guilty plea to assault pursuant to the plea agreement. In doing so, Muhire signed a plea form that contained the following advisement regarding the immigration consequences of his guilty plea:

> The Court advised me of the following: "If you are not a citizen of the United States you are hereby advised that conviction of the offense to which you are pleading guilty or no contest may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

Plea of Guilty or No Contest and Waiver of Rights (Mar. 8, 2018).

{¶ 4} The trial court discussed the foregoing immigration language with Muhire and asked if Muhire understood it. In response, Muhire indicated that he understood what the trial court had said. The trial court thereafter accepted Muhire's guilty plea and proceeded to sentencing.

{¶ 5} At sentencing, the trial court ordered Muhire to serve 180 days in jail with 157 days suspended and 23 days of jail-time credit. The trial court also ordered Muhire to complete one year of supervised probation, drug and alcohol counseling, and a batterer's intervention program known as the August Project. On April 12, 2018, the trial court modified Muhire's sentence to require him to complete the Stop the Violence program as

opposed the August Project.

{¶ 6} On December 18, 2018, Muhire was discharged from supervised probation. Almost two years later, on August 18, 2020, Muhire hired counsel and filed a motion to withdraw his guilty plea to assault. In that motion, Muhire argued that his guilty plea had not been knowingly, intelligently, and voluntarily entered because he had a limited understanding of the English language and had required the assistance of an interpreter at the plea hearing. Muhire also argued that his trial counsel had provided ineffective assistance by failing to advise him of the immigration consequences of his guilty plea and by not using an interpreter to speak with him.

{¶ 7} On October 21, 2020, the trial court held an evidentiary hearing on Muhire's motion to withdraw his guilty plea. At the hearing, Muhire testified in support of his motion and used a Kinyarwanda interpreter[1] to translate for him during the entire proceeding. Thereafter, the State presented testimony from the appointed attorney who represented Muhire during his plea, Melissa Pfahler. The State also presented testimony from Muhire's probation officer, Stephanie Jackson. The following is a summary of the testimony that was presented at the hearing.

*Jean Bosco Muhire*

{¶ 8} Muhire testified that he was born in Congo and came to the United States as

---

[1] After the Kinyarwanda interpreter was sworn in, Muhire's counsel briefly questioned the interpreter, and the interpreter testified that he might not understand some legal terms. *See* Hearing Tr. (Oct. 21, 2020), p. 5. Although there were a few instances where the interpreter had difficulty translating, the interpreter was nevertheless able to assist Muhire throughout the plea hearing.

a refugee from Rwanda in May 2017. Muhire claimed that he spoke very little English when he arrived in the United States and that Kinyarwanda was his first language. Muhire testified that, despite taking some English grammar classes, he did not understand everything that was being said when he conversed in English. Muhire claimed that he conversed in English by extending the meaning of the English words he knew in order to understand the topic of conversation.

{¶ 9} With regard to his criminal case, Muhire testified that he was appointed counsel after he was charged with domestic violence, assault, aggravated menacing, and menacing in February 2018. Muhire testified that his counsel had not used an interpreter to speak with him during their meetings and that he had not understood everything his counsel told him. Muhire also testified that he had told his counsel about the incident that led to the aforementioned charges, but that he had not been sure how much of the information his counsel understood.

{¶ 10} Concerning his charges, Muhire testified that his counsel had advised him that assault and domestic violence were similar charges, but that assault was "better" because he could be deported if he was convicted of domestic violence. Hearing Tr., (Oct. 21, 2020), p. 13. Muhire testified that he did not remember his counsel ever advising him of the immigration consequences of entering a guilty plea to assault. Muhire also testified that he signed a bunch of papers with the understanding that doing so would allow him to get out of jail. Muhire claimed that he could not read English and did not know what the papers said. Muhire further testified that, at the time of his plea, he did not know the meaning of the term "plea deal." Hearing Tr., p. 57.

**{¶ 11}** Continuing, Muhire testified that he had recently applied for a green card with the assistance of an attorney. According to Muhire, his application prompted an interview with immigration services. Muhire testified that the interview had worried the attorney who was helping him and that the attorney believed the interview had been conducted due to his assault conviction. As a result, the attorney referred Muhire to his current counsel, who helped him withdraw his application for a green card. Muhire testified that his immigration status is now in limbo.

**{¶ 12}** On cross-examination, Muhire clarified that, despite using an interpreter, he understood some of what was being said at the plea withdraw hearing. Muhire then testified about a "long" conversation he had with his trial counsel while in jail and confirmed that he had never asked his counsel for an interpreter. Hearing Tr., p. 27-33. Muhire also confirmed that he had testified without the assistance of an interpreter on December 13, 2018, at his wife's trial in Dayton Municipal Court Case No. 2018-CRB-5700. The State played an audio-recorded portion of Muhire's trial testimony in that case, and Muhire confirmed that the voice testifying on the recording was his own.

**{¶ 13}** Concerning his guilty plea to assault, Muhire testified that he remembered the trial court judge reading him a form at the plea hearing before he entered his plea, but had not understood what the judge was saying. Muhire testified that his counsel told him that the text of the form was read to every immigrant and that it was of "no consequence." Hearing Tr., p. 51. The State then played an audio recording of the trial court judge's reading Muhire the portion of the plea form advising him of the immigration consequences of his guilty plea at the plea hearing. After listening to the audio recording, Muhire

testified that it would have been "possible" for him to have told the judge that he did not understand what the judge was saying. Hearing Tr., p. 53-54, 61. Muhire, however, indicated that he did not express his lack of understanding at the plea hearing because his counsel told him to accept what the judge said.

*Melissa Pfahler*

{¶ 14} Muhire's appointed counsel, Melissa Pfahler, testified that based on Muhire's being a Rwandan refugee and having been in the United States for a short period of time, it was her first impression that Muhire would need an interpreter. However, Pfahler's testimony indicates that this impression changed after Pfahler met Muhire in person. Pfahler testified that she met with Muhire four times between February 21, 2018, and March 8, 2018. Although Pfahler did not have an independent recollection of her meetings with Muhire, she testified that her case notes established that she had no issue communicating with Muhire in English. Pfahler testified that her case notes were "pretty clear" that Muhire spoke English to her and that she understood what he said. Hearing Tr., p. 72. Pfahler also testified that, prior to meeting Muhire, her office intake specialist interviewed Muhire and completed intake forms for his case. According to Pfahler, none of the intake forms associated with Muhire's case noted that Muhire needed an interpreter to communicate with the intake specialist.

{¶ 15} Pfahler also testified that her case notes reflected that she and Muhire discussed Muhire's charges, possible penalties, the State's plea offer, and the immigration consequences listed in the plea form. Pfahler explained that there was

nothing about her conversations with Muhire that led her to believe that Muhire did not understand what she was talking about. Pfahler also testified that Muhire never asked for an interpreter during any of their meetings. Pfahler further testified that if Muhire had not understood her, she would have ended their meeting and called the court to request the appointment of an interpreter.

{¶ 16} In addition, Pfahler testified that her case notes established that she spoke to an immigration attorney regarding Muhire's case. Pfahler testified that she determined a guilty plea to assault provided Muhire with the best possible outcome because all of Muhire's other charges were either deportable offenses or not expungeable. On cross-examination, Pfahler could not recall whether she specifically researched what effect an assault conviction would have on Muhire's immigration status. However, Pfahler testified that her case notes indicated that she looked into the issue of moral turpitude. Pfahler testified that she "probably reviewed * * * what is a crime of moral turpitude" and may have discussed with Muhire whether assault fell under that category. Hearing Tr., p. 88-90.

{¶ 17} Pfahler testified that, under the circumstances of this case, she would have told Muhire that she could not make any promises about what effect a guilty plea to assault would have on his immigration status. Pfahler also confirmed that she would have read Muhire the immigration consequences listed in the plea form. Pfahler further testified that Muhire never told her that he did not understand the information in the plea form or that he did not understand what she was saying during the plea hearing. Pfahler also did not recall Muhire ever asking for an interpreter at the plea hearing.

Pfahler testified that if Muhire had told her that he did not understand what was being said at the plea hearing, she would have asked the trial court to continue the hearing and would have requested an interpreter.

*Stephanie Jackson*

{¶ 18} Muhire's probation officer, Stephanie Jackson, testified that she first met with Muhire on April 23, 2018, just six weeks after he entered his guilty plea to assault. Jackson testified that she and Muhire discussed various topics during that meeting, including the rules of probation and the situation/reasons why he was on probation. Jackson testified that she had no difficulty communicating with Muhire and that Muhire never asked for an interpreter or stated that he did not understand what she was saying. According to Jackson, Muhire was able to appropriately respond to a 30-question assessment that she conducted verbally. Jackson testified that Muhire never indicated a lack of understanding or the need for an interpreter during any of the 30 questions.

{¶ 19} Jackson further testified that she met with Muhire once a month for the Stop the Violence program and that she had no difficulty understanding Muhire during that time. Jackson testified that Muhire was able to converse in a manner that corresponded to the program topic being discussed. Jackson testified that the Stop the Violence program was conducted in basic English and that Muhire successfully completed the program. To complete the program, Jackson testified that Muhire had to attend 24 one-hour classes during which Muhire would write out answers to daily questions, keep a written journal, participate in group discussions, and verbally check in to class. Although

Jackson testified that Muhire likely received some help with his written assignments, she testified that Muhire specifically told her that he could speak and write in English.

*Post-Hearing Decision*

{¶ 20} After hearing the foregoing testimony, the trial court took Muhire's motion to withdraw his guilty plea under advisement and then issued a written decision denying the motion. In denying the motion, the trial court found that the hearing testimony established that Muhire had understood English and thus knowingly entered his guilty plea to assault. Relying on Pfahler's testimony, the trial court also rejected Muhire's ineffective assistance claim on grounds that Pfahler's representation was not deficient.

{¶ 21} Muhire now appeals from the trial court's decision denying his post-sentence motion to withdraw his guilty plea, raising two assignments of error for review.

**Standard of Review**

{¶ 22} "We review a trial court's decision on a post-sentence motion to withdraw guilty plea * * * for an abuse of discretion." *State v. Ogletree*, 2d Dist. Clark No. 2014-CA-16, 2014-Ohio-3431, ¶ 11. " 'Absent an abuse of discretion on the part of the trial court in making the ruling, its decision must be affirmed.' " *Id.*, quoting *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. Most instances of abuse of discretion occur when a trial court makes a decision that is

unreasonable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

## First Assignment of Error

{¶ 23} Under his first assignment of error, Muhire contends that the trial court should have granted his post-sentence motion to withdraw his guilty plea because his limited understanding of the English language prevented him from entering a knowing, intelligent, and voluntary guilty plea to assault. Muhire claims that the alleged language barrier prevented him from understanding his plea and that the trial court's failure to appoint an interpreter at his plea hearing was an abuse of discretion. We disagree.

{¶ 24} "Under Crim.R. 32.1, a trial court may permit a defendant to withdraw a plea after imposition of sentence only to correct a manifest injustice." (Citations omitted.) *State v. Ray*, 2d Dist. Champaign No. 2019-CA-31, 2020-Ohio-4769, ¶ 11. The burden to prove the existence of a manifest injustice in a post-sentence motion to withdraw a plea rests upon the defendant. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus; *State v. Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, 869 N.E.2d 708, ¶ 20 (2d Dist.). A defendant may establish a manifest injustice " 'by showing that he did not enter the guilty plea in a knowing, intelligent, or voluntary manner.' " *State v. Leifheit*, 2d Dist. Clark No. 2019-CA-78, 2020-Ohio-5106, ¶ 16, quoting *State v. Riley*, 4th Dist. Washington No. 16CA29, 2017-Ohio-5819, ¶ 18. (Other citations omitted.) A determination of whether a plea is knowing, intelligent and voluntary

is based upon a review of the record. *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992).

{¶ 25} In this case, the transcript of Muhire's plea hearing was not made a part of the record on appeal. The only transcripts provided to this court were that of the hearing on Muhire's motion to withdraw his guilty plea and a partial transcript of Muhire's trial testimony in Case No. 2018-CRB-5700. Although there is no transcript of Muhire's plea hearing, the testimony given at the plea withdrawal hearing established that the following facts were undisputed: (1) Muhire did not request to have an interpreter assist him at the plea hearing; (2) an interpreter was never appointed by the trial court at the plea hearing; (3) the trial court read the portion of the plea form advising Muhire of the immigration consequences of his guilty plea at the plea hearing and asked if Muhire understood the consequences; and (4) Muhire indicated an understanding of the immigration consequences read by the trial court and never told the trial court that he did not understand what the trial court was saying at the plea hearing. It is also undisputed that Muhire is not a United States citizen but a refugee from Rwanda whose first language is Kinyarwanda.

{¶ 26} "This court has previously recognized that 'in a criminal case, the defendant is entitled to hear the proceedings in a language that he can understand.' " *State v. Castro*, 2d Dist. Montgomery No. 14398, 1995 WL 558782, *4 (Sept. 20, 1995), quoting *State v. Pina*, 49 Ohio App.2d 394, 399, 361 N.E.2d 262 (2d Dist.1975). "Moreover, R.C. 2311.14(A) requires that a trial court appoint an interpreter for legal proceedings whenever a participant in the proceeding 'cannot readily understand or communicate' as

a result of an impediment." *Id.* Similarly, Sup.R. 88(A) mandates the appointment of a foreign language interpreter, in the absence of a request, only if "the court concludes the party or witness is limited English proficient or non-English speaking and determines the services of the interpreter are necessary for the meaningful participation of the party or witness."

{¶ 27} "The trial court has broad discretion in determining whether a criminal defendant requires the assistance of an interpreter." *Castro* at *4, citing *State v. Saah*, 67 Ohio App.3d 86, 95, 585 N.E.2d 999 (8th Dist.1990); *State v. Flores*, 10th Dist. Franklin No. 19AP-405, 2020-Ohio-593, ¶ 11. "The decision regarding whether a defendant is entitled to a court appointed language interpreter is initially based on the trial court's assessment of the defendant's apparent ability to comprehend the English language and communicate therein." (Citations omitted.) *Castro* at *4. "[A]n imperfect grasp of the English language may be sufficient as long as the defendant has the ability to understand and communicate in English." (Citations omitted.) *Id.*

{¶ 28} Here, without a record of the plea hearing, we must presume the regularity of that proceeding as it relates to the issue of whether an interpreter should have been appointed by the trial court. *See State v. Miller*, 2d Dist. Montgomery No. 25893, 2014-Ohio-4508, ¶ 26, quoting *State v. Kreuzer*, 2d Dist. Greene No. 1998-CA-100, 1999 WL 959206, *5 (Aug. 6, 1999) (" 'absent a transcript of the proceedings, this Court must presume regularity in the proceedings before the trial court' "). Since the available record establishes that Muhire did not request an interpreter at the plea hearing, we presume that the trial court assessed Muhire's ability to comprehend and communicate in English

at the plea hearing and, after doing so, appropriately determined that the appointment of an interpreter was unnecessary for Muhire to enter a knowing, intelligent, and voluntary guilty plea. Therefore, based on the limited record before this court, we find no abuse of discretion with regard to the trial court's decision not to appoint a foreign language interpreter for Muhire's plea hearing.

{¶ 29} Our decision on this matter is supported by the testimony presented at Muhire's plea withdrawal hearing. For example, the testimony of Muhire's former counsel, Pfahler, and his probation officer, Jackson, established that Muhire was able to understand and communicate in English at or near the time he entered his guilty plea. The written transcript and audio-recording of the testimony Muhire gave at his wife's trial in Case No. 2018-CRB-5700 also established that Muhire could effectively understand and communicate in English without an interpreter. On the audio-recording, Muhire can be heard conversing with the trial court and counsel with relative ease while being questioned. Although Muhire had difficulty with a few words during his testimony, he was able to seek clarification and then supply appropriate responses to the questions asked of him.

{¶ 30} It should also be noted that Muhire testified at his wife's trial ten months before he testified at his plea withdrawal hearing. This is significant because Muhire declined the assistance of an interpreter at his wife's trial but sought the assistance of an interpreter at the subsequent plea withdrawal hearing. Muhire's demonstrated ability to understand and communicate in English during his wife's trial leads this court to believe that his alleged need for an interpreter at the plea withdrawal hearing was disingenuous.

Therefore, we do not place much weight on the fact that Muhire used an interpreter at the plea withdrawal hearing.

{¶ 31} Taking all of this into consideration, we also find no abuse of discretion with regard to the trial court's rejecting the language-barrier claim in Muhire's motion to withdraw his guilty plea. In this court's view, the trial court reasonably determined from the testimony presented at the plea withdrawal hearing that Muhire had a sufficient grasp of the English language and that no language barrier prevented him from knowingly, intelligently, and voluntarily entering his guilty plea to assault. In other words, it was reasonable for the trial court to find no manifest injustice in the form of a language barrier. Accordingly, the trial court's denial of Muhire's post-sentence motion to withdraw his guilty plea was not an abuse of discretion in that regard.

{¶ 32} Muhire's first assignment of error is overruled.

**Second Assignment of Error**

{¶ 33} Under his second assignment of error, Muhire contends that the trial court should have granted his post-sentence motion to withdraw his guilty plea based on ineffective assistance of counsel, and that the trial court's failure to find his counsel ineffective was against the manifest weight of the evidence. Specifically, Muhire contends that his counsel was ineffective because she failed to advise him about the potential immigration consequences of his guilty plea in a language that he could understand. Muhire claims that if his counsel had appropriately warned him of the immigration consequences of his guilty plea, he would not have pled guilty to assault but

would have gone to trial.

{¶ 34} Given that we have already established that Muhire's language-barrier claim lacks merit, we will only focus on Muhire's claim that his trial counsel provided ineffective assistance by failing to advise him of the immigration consequences of his guilty plea. Because abuse of discretion is the appropriate standard for reviewing a trial court's judgment on a post-sentence motion to withdraw guilty plea, Muhire's manifest weight claim is not well taken. Instead, we will determine whether the trial court's decision rejecting the ineffective assistance claim in Muhire's motion was an abuse of discretion.

{¶ 35} It is well established that " '[i]neffective assistance of counsel can constitute manifest injustice sufficient to allow the post-sentence withdrawal of a guilty plea.' " *State v. Banks*, 2d Dist. Montgomery No. 25188, 2013-Ohio-2116, ¶ 9, quoting *State v. Dalton*, 153 Ohio App.3d 286, 2003-Ohio-3813, 793 N.E.2d 509, ¶ 18 (10th Dist.). To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, the defendant must establish: (1) his trial counsel's performance was deficient; and (2) the deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688; *Bradley* at 142. When evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 36} As relevant to this case, "[a] defense attorney has a duty to advise a noncitizen client that 'pending criminal charges may carry a risk of adverse immigration consequences,' and, if it is 'truly clear' what those consequences are, counsel must correctly advise the defendant of the consequences." *State v. Galdamez*, 2015-Ohio-3681, 41 N.E.3d 467, ¶ 16 (10th Dist.), quoting *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). *Accord State v. Cardenas*, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 39 (2d Dist.). " 'A defense attorney's failure to advise [his or her] client accordingly satisfies the first prong of *Strickland*, as it constitutes deficient performance.' " *Cardenas* at ¶ 39, quoting *Galdamez* at ¶ 16. *Accord State v. Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, ¶ 15, citing *Padilla* at 373-374 (providing misadvice about immigration consequences or failing to advise at all of potential deportation consequences associated with a plea satisfies the first prong of *Strickland*).

{¶ 37} The Supreme Court of Ohio, however, has "acknowledged that immigration law can be complex and that the deportation consequences of a particular plea will not always be clear." (Citations omitted.) *State v. Bozso*, 162 Ohio St.3d 68, 2020-Ohio-

3779, 164 N.E.3d 344, ¶ 17. "In cases in which the law 'is not succinct and straightforward,' an attorney 'need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.' " *Id.*, quoting *Padilla* at 369. *Accord State v. Poppel*, 2d Dist. Champaign No. 2020-CA-34, 2021-Ohio-2536, ¶ 10. " 'But when the deportation consequence is truly clear, * * * the duty to give correct advice is equally clear.' " *Bozso* at ¶ 17, quoting *Padilla* at 369.

**{¶ 38}** After reviewing the relevant portion of the Immigration and Nationality Act, i.e., 8 U.S.C. 1227, we find that the deportation consequence of Muhire's guilty plea to one count of first-degree-misdemeanor assault is not straightforward or clear. This is because assault is not specifically listed as a deportable offense under 8 U.S.C. 1227(a)(2). That statute does, however, provide that crimes "involving moral turpitude" are deportable. 8 U.S.C. 1227(a)(2)(A)(i). Specifically, the statue states that: "Any alien who * * * is convicted of a crime involving moral turpitude committed within five years * * * after the date of admission, and * * * is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." 8 U.S.C. 1227(a)(2)(A)(i).

**{¶ 39}** "[C]rimes involving moral turpitude" is "a general category that covers a wide variety of crimes." *Barton v. Barr*, __ U.S. __, 140 S.Ct. 1442, 1448, 206 L.Ed.2d 682 (2020). The United States Court of Appeals for the Sixth Circuit has explained that:

> "The term 'crime involving moral turpitude' is not defined in the [Immigration and Nationality Act] or by agency regulations." [*Reyes v. Lynch*, 835 F.3d 556, 560 (6th Cir. 2016)] (quoting *Yeremin v. Holder*, 738 F.3d 708, 714 (6th Cir. 2013)). But the [Board of Immigration Appeals

("BIA")] has held that "a criminal offense involves 'moral turpitude' if the relevant statute defines the offense in such a manner that it necessarily entails conduct on the part of the offender that is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general." *In re Kochlani*, 24 I. & N. Dec. 128, 129 (BIA 2007). The BIA has also held that "an offense must have two essential elements to constitute a crime involving moral turpitude: a culpable mental state and reprehensible conduct." *Matter of Medina*, 26 I. & N. Dec. 79, 82 (BIA 2013). Moreover, "[c]rimes committed intentionally or knowingly have historically been found to involve moral turpitude." *In re Solon*, 24 I. & N. Dec. 239, 240 (BIA 2007).

**With regard to statutes prohibiting assault and battery, the BIA has observed that assault "may or may not involve moral turpitude,"** *In re Fualaau*, 21 I. & N. Dec. 475, 477 (BIA 1996), and that the inquiry must focus on "an assessment of both the state of mind and the level of harm required to complete the offense," *Solon*, 24 I. & N. Dec. at 242. Simple assault and battery—which typically has elements of general intent and a mere touching—is usually not considered a crime involving moral turpitude. *Id.* at 241-42. On the other hand, assault-and-battery offenses "that necessarily involve[ ] the intentional infliction of serious bodily injury ... have been held to involve moral turpitude because such intentionally injurious conduct reflects a level of immorality that is greater than that associated

with a simple offensive touching."   *In re Sanudo*, 23 I. & N. Dec. 968, 971

(BIA 2006) * * *.

(Emphasis added.)   *Lovano v. Lynch,* 846 F.3d 815, 817 (6th Cir.2017).

{¶ 40} Because assault "may or may not involve moral turpitude," it was unclear whether Muhire's guilty plea to assault would result in deportation under 8 U.S.C. 1227(a)(2)(A)(i).   Such a determination would require an immigration court to assess whether the injurious conduct at issue reflected a sufficient level of immorality so as to qualify as a crime involving moral turpitude.   Because of this lack of clarity on the matter, Muhire's counsel, Pfahler, was only required to advise Muhire that pleading guilty to assault might carry the risk of adverse immigration consequences.

{¶ 41} At the plea withdrawal hearing, Muhire testified that Pfahler told him that if he was convicted of domestic violence he would be deported, but that a conviction for assault would not be "as difficult or problematic."   Hearing Tr. (Oct. 21, 2020), p. 53. Muhire, however, claimed that Pfahler did not otherwise advise him of the adverse immigration consequences of pleading guilty to assault.

{¶ 42} Pfahler, on the other hand, testified that her case notes reflected that she and Muhire discussed Muhire's charges, possible penalties, the State's plea offer, and the immigration consequences listed in the plea form prior to Muhire entering his guilty plea.   Pfahler also testified that she would have read the immigration consequences in the plea form to Muhire.   As previously discussed, the plea form stated the following:

If you are not a citizen of the United States you are hereby advised

that conviction of the offense to which you are pleading guilty or no contest

may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

Plea of Guilty or No Contest and Waiver of Rights (Mar. 8, 2018).

**{¶ 43}** Pfahler's testimony, if believed, established that Pfahler satisfied her duty to advise Muhire that pleading guilty to assault could carry the risk of adverse immigration consequences. The trial court chose to rely on Pfahler's testimony as opposed to Muhire's and thus rejected Muhire's ineffective assistance claim on grounds that Pfahler's legal representation was not deficient with regard to the immigration-consequences advisement. This decision was within the trial court's discretion, as "[d]ecisions regarding the credibility of witnesses are primarily for the trial court to make, given that the trial judge, as the finder of fact at the hearing on the motion to withdraw the plea, saw and heard the witnesses' testimony." (Citations omitted.) *State v. Hess*, 2d Dist. Montgomery No. 24453, 2012-Ohio-961, ¶ 22.

**{¶ 44}** Based on Pfahler's testimony, which the trial court found credible, we find that the trial court's decision to reject the ineffective assistance claim in Muhire's post-sentence motion to withdraw his guilty plea was reasonable. Because the trial court reasonably determined that Muhire had failed to establish a manifest injustice in the form of ineffective assistance of counsel, the trial court's decision denying Muhire's post-sentence motion to withdraw his guilty plea was not an abuse of discretion.

**{¶ 45}** Muhire's second assignment of error is overruled.

## Conclusion

**{¶ 46}** Having overruled both of Muhire's assignments of error, the judgment of the trial court denying Muhire's post-sentence motion to withdraw his guilty plea is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Stephanie L. Cook
Andrew D. Sexton
Mohamed Al-Hamdani
Hon. Daniel G. Gehres