[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bozso*, Slip Opinion No. 2020-Ohio-3779.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3779

THE STATE OF OHIO, APPELLANT, *v.* BOZSO, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Bozso*, Slip Opinion No. 2020-Ohio-3779.]

*Criminal law—Motion to withdraw a guilty plea—Ineffective assistance of counsel arising from counsel's alleged failure to advise a noncitizen client of immigration consequences of entering a guilty plea—Defendant must show that counsel's performance was deficient and must demonstrate prejudice resulting from counsel's deficient performance—Prejudice not demonstrated—Court of appeals' judgment reversed.*

(No. 2018-1007—Submitted March 11, 2020—Decided July 23, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 106149, 2018-Ohio-1750.

_____

FRENCH, J.

**{¶ 1}** This appeal requires us to determine, once again, whether a noncitizen criminal defendant may withdraw a guilty plea on the grounds that his attorney failed to advise the defendant of the adverse immigration consequences of his plea.

**{¶ 2}** In *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, we held that when a noncitizen criminal defendant alleges ineffective assistance of counsel arising from the plea process, the defendant must meet the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and applied in the immigration context in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). *Romero* at ¶ 1, 3, and 14. First, the defendant must show that counsel's performance was deficient. *Id.* at ¶ 15. When an attorney's noncitizen client is considering a plea, counsel must inform her client whether the plea carries a risk of deportation. *Id.*; *Padilla* at 374. Second, the defendant must demonstrate prejudice resulting from counsel's deficient performance. *Romero* at ¶ 16; *Strickland* at 687.

**{¶ 3}** We now consider the second part of this test to determine whether defendant-appellee, Emeric Bozso, has met the requisite showing of prejudice— specifically, that he would not have entered a guilty plea but for the erroneous advice of his plea-stage counsel. *Romero* at ¶ 16; *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Based on the record before us, we conclude that Bozso has not demonstrated prejudice arising from his counsel's deficient performance. We therefore reverse the judgment of the Eighth District Court of Appeals and reinstate Bozso's convictions.

## I. FACTS AND PROCEDURAL BACKGROUND

**{¶ 4}** Bozso, a Romanian citizen, was admitted to the United States in 1986 as a refugee. He has been a lawful permanent resident of the United States since 1987.

**{¶ 5}** In June 2016, a Cuyahoga County Grand Jury returned an 18-count indictment against Bozso for the alleged rape of two victims in June 1996 and in

November 1996. For the June 1996 incident, which involved a 12-year-old female victim, the indictment charged Bozso with six counts of rape (all first-degree felonies), three counts of gross sexual imposition (third- and fourth-degree felonies), six counts of complicity, and one count of kidnapping (a first-degree felony). For the November 1996 incident, which involved an adult female victim, the indictment charged Bozso with one count of rape and one count of kidnapping (both first-degree felonies). The indictment alleged that Bozso used or carried a firearm while committing both November offenses and included a one-year and three-year firearm specification for each count.

{¶ 6} After negotiations with the state, Bozso pleaded guilty in November 2016 to one count of sexual battery and one count of attempted abduction. The record before us contains no transcript of the plea hearing. We therefore do not know what the trial court actually said to Bozso as part of its required plea colloquy under Crim.R.11. But the November 8, 2016 nunc pro tunc entry journalizing the plea notes Bozso's noncitizen status and indicates that the trial court gave Bozso an advisement in accordance with R.C. 2943.031. That statute requires trial courts to advise a noncitizen defendant prior to accepting a guilty or no-contest plea to a felony (or misdemeanor other than a minor misdemeanor) that entering the plea " 'may have the consequences of deportation' " from the United States. R.C. 2943.031(A).

{¶ 7} The trial court sentenced Bozso to one year of prison for each count but suspended the sentences and imposed two years of probation for each conviction.

{¶ 8} In January 2017, the United States Department of Homeland Security issued a notice initiating deportation proceedings against Bozso under Section 237(a)(2)(A)(ii) and (iii) of the Immigration and Nationality Act ("INA"). 8 U.S.C. 1227(a)(2)(A)(ii), (iii). These provisions authorize the removal of any noncitizen convicted of two or more crimes involving moral turpitude, not arising out of a

single scheme of criminal misconduct, *id.* at Section 1227(a)(2)(A)(ii), or convicted of an aggravated felony, *id*. at Section 1227 (a)(2)(A)(iii). The notice cited Bozso's November 2016 convictions for sexual battery and attempted abduction and an additional conviction in 2001 for attempted theft as the bases for deportation.

{¶ 9} In June 2017, Bozso filed a motion to withdraw his November 2016 guilty pleas on the grounds that his counsel provided improper advice as to the potential immigration consequences of his pleas. In support of the motion, Bozso attached his own affidavit, in which he says that he was informed at the time of entering his pleas that INA Section 212(c) would provide potential relief from deportation or immigration consequences of his guilty plea. Bozso states that he later learned he had been misinformed and that Section 212(c) would not provide him any relief. Bozso also states that he would not have pleaded guilty had he known that relief was unavailable to him.

{¶ 10} Former INA Section 212(c) gave the United States Attorney General discretion, upon application, to waive deportation for certain lawful permanent residents, including those who had committed an aggravated felony. In 1996, Congress repealed Section 212(c), effective April 1, 1997. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 (enacted September 30, 1996), Section 304(b). The United States Supreme Court held, however, that the repeal of Section 212(c) does not apply retroactively, and discretionary relief under Section 212(c) remains available to noncitizens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), *superseded by statute on other grounds as stated in Nasrallah v. Barr*, ___ U.S. ___, 140 S.Ct. 1683, 207 L.Ed.2d 111 (2020). A lawful permanent resident who pleaded guilty to a deportable crime before April 1, 1997, the effective date of the

provisions repealing Section 212(c), might be eligible for the waiver. But since Bozso entered his guilty plea in 2016, he was not eligible for any relief under Section 212(c).

{¶ 11} In June 2017, the trial court held a hearing on Bozso's motion to withdraw his guilty pleas. Bozso did not call any witnesses. The state called as a witness Bozso's plea-stage counsel, who testified that he consulted with an immigration attorney as to the possible immigration consequences of Bozso entering a plea agreement. Bozso's plea-stage counsel testified that on September 21, 2016, the consulting immigration attorney sent him the following e-mail:

> The sex offense conviction will lead to the client being placed into deportation. As an aggravated felony, the client would be subject to mandatory detention while the case proceeds through the immigration court. As a very preliminary conclusion, I would state that if the June date is adhered to rather than the November case, that the client would have some relief available to him. Specifically, 212(c) relief. This relief is discretionary to the court and by no means should the client believe that it is assured that he would not be ordered deported as a result of a conviction for this offense.

> I will supply a more comprehensive advisement for you shortly.

{¶ 12} Bozso's plea-stage counsel testified that if the immigration attorney later provided Bozso a more complete advisement, it went directly to Bozso without counsel's knowledge. Counsel also testified that the trial court judge read verbatim the required statutory advisement in R.C. 2943.031(A) advising Bozso of the possible consequences of his plea. The state attempted to elicit testimony from

Bozso's counsel as to the primary concern driving Bozso's decision to enter a guilty plea. Counsel invoked attorney-client privilege and refused to answer. As a result, there is no testimony, aside from the statements in his affidavit, as to Bozso's motives for entering his guilty pleas.

{¶ 13} About a month after the hearing, the trial court denied Bozso's motion to withdraw the guilty pleas. The court concluded that the advisement from the consulting immigration attorney "makes it clear that [Bozso] should not have relied upon the possibility that he would obtain relief from deportation, and that his doing so appears to have been a case of hope over reality."

{¶ 14} The Eighth District reversed the judgment of the trial court. The court of appeals applied the *Strickland* two-part test to determine the deficiency of counsel's performance and the prejudice arising from that deficiency. On the first prong, the court concluded that the law is " 'succinct and straightforward' " that relief under INA Section 212(c) was not available to Bozso and that counsel was therefore "deficient for not definitely determining the deportation consequences" of Bozso's plea. 2018-Ohio-1750 at ¶ 20, citing *Padilla*, 559 U.S. at 369, 130 S.Ct. 1473, 176 L.Ed.2d 284. The Eighth District also concluded that Bozso's affidavit was sufficient to establish that counsel's deficient performance prejudiced him, since he averred that he "would not have pled guilty * * * had he known that relief from immigration consequences pursuant to INA § 212(c) was wholly unavailable to him." *Id*. at ¶ 24.

{¶ 15} This court accepted the state's discretionary appeal, held the matter for our decision in *State v. Romero*, and stayed briefing. 2018-Ohio-4092. After the release of our decision in *Romero*, we lifted the stay and ordered briefing. 2019-Ohio-2496. The state's appeal presents one proposition of law:

> A trial court does not abuse its discretion when it denies a non-citizen defendant's motion to withdraw his guilty plea where, prior

to entering a guilty plea, the trial court had complied with Crim.R. 11 and provided the deportation advisement pursuant to R.C. 2943.031, and when counsel had warned defendant that his guilty plea would place him into deportation proceedings with limited options for relief.

## II.  ANALYSIS

{¶ 16} As we summarized earlier in this opinion, the two-prong test applied in *Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, governs whether a noncitizen criminal defendant may withdraw a guilty plea on the grounds that his attorney failed to advise him of the adverse immigration consequences of his plea. *Id.* at ¶ 3.

### A.  The deficient-performance prong

{¶ 17} First, the defendant must show that counsel's performance was deficient. *Id.* at ¶ 15, citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.  When an attorney's noncitizen client is considering a plea, counsel must advise the client whether the plea carries a risk of deportation.  *Id.*, citing *Padilla*, 559 U.S. at 374, 130 S.Ct. 1473, 176 L.Ed.2d 284.  We have acknowledged that immigration law can be complex and that the deportation consequences of a particular plea will not always be clear.  *Id*. at ¶ 26, citing *Padilla* at 369.  In cases when the law "is not succinct and straightforward," an attorney "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."  *Padilla* at 369.  "But when the deportation consequence is truly clear, * * * the duty to give correct advice is equally clear."  *Id.*

{¶ 18} The Eighth District concluded that counsel's performance was deficient because the law was "succinct and straightforward" that relief under INA Section 212(c) was not available to Bozso.  In its jurisdictional memorandum, the

state argued that the Eighth District erred because the law was not clear as to Bozso's eligibility for relief under Section 212. The state, however, has abandoned that argument in its merit brief and addresses only the second prong under *Strickland*. We therefore assume that the state no longer challenges the Eighth District's finding that Bozso satisfied the first prong. *See E. Liverpool v. Columbiana Cty. Budget Comm.*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3 (argument not raised in party's brief is deemed abandoned). We therefore turn to the question whether Bozso has satisfied the second prong of his ineffective-assistance claim.

## B. The prejudice prong

{¶ 19} To establish prejudice under the second prong of *Romero*, Bozso must show that there is " 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, at ¶ 16, quoting *Hill*, 474 U.S. at 59, 106 S.Ct. 366, 88 L.Ed.2d 203. As set out in *Lee v. United States*, ___ U.S. ___, 137 S.Ct. 1958, 1965-1969, 198 L.Ed.2d 476 (2017), and in *Romero* at ¶ 29-33, courts should consider various factors to determine whether a defendant has demonstrated prejudice resulting from counsel's erroneous advice. When considering those factors, we find that the evidence here does not support a finding of prejudice.

### 1. The defendant's connections to the United States

{¶ 20} Bozso was admitted to the United States as a refugee from Romania in 1986 when he was 21 years old. He has resided in this country for over 30 years and for nearly all of his adult life. If Bozso's connections to the United States were the only factor, it would be reasonably probable to find that Bozso would not have pleaded guilty had he known it would lead to deportation.

*2. The importance that the defendant placed on avoiding deportation*

{¶ 21} Next, we consider evidence of the importance that Bozso placed on avoiding deportation as the motive for pleading guilty. *See Romero* at ¶ 31, citing *Lee* at ___, 137 S.Ct. at 1967-1968. In his affidavit in support of his motion to withdraw his guilty pleas, Bozso states that he would not have pleaded guilty had he known that relief from deportation was not available to him under INA Section 212(c). Courts, however, "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee* at ___, 137 S.Ct. at 1967; *accord Romero* at ¶ 28. We must look to contemporaneous evidence that substantiates Bozso's statement. *Lee* at ___, 137 S.Ct. at 1967; *accord Romero* at ¶ 28. And we find that evidence lacking here.

{¶ 22} In *Lee*, the record contained at least three sources of contemporaneous evidence showing that deportation was the determinative issue in the defendant's decision whether to enter a guilty plea. First, Lee himself testified at the evidentiary hearing on his motion to withdraw his plea. *Id.*, ___ U.S. at ___, 137 S.Ct. at 1963, 198 L.Ed.2d 476. Lee's testimony established that he repeatedly asked his attorney whether there was any risk of deportation and that his attorney became upset when Lee repeatedly inquired about his immigration status. *Id.* According to Lee, his attorney assured him that there was nothing to worry about and incorrectly advised him that if deportation was not in the plea agreement, the government could not deport him. *Id.*

{¶ 23} Second, Lee's plea-stage counsel also testified at the hearing and acknowledged that if he had known Lee would be deported upon pleading guilty, he would have advised him to go to trial. *Id.*

{¶ 24} And finally, the record of Lee's plea colloquy demonstrated that he did not understand the trial court's advisement that pleading guilty could result in deportation. *Id.* at 1968. When the trial court judge asked how the advisement affected his decision, Lee responded, " 'I don't understand.' " *Id.* When Lee turned

to his counsel for advice, the attorney assured him the judge's statement was only a standard warning. *Id.* The court concluded that the record contained "substantial and uncontroverted evidence" that but for his counsel's errors, Lee would not have pleaded guilty. *Id*. at \_\_\_, 137 S.Ct. at 1969.

{¶ 25} We point to *Lee* not to demand, as the dissent contends, that Bozso must present evidence just as good as the "substantial and uncontroverted" evidence that supported Lee's motion to withdraw his guilty plea. Rather, *Lee* presents examples of the types of contemporaneous evidence that would support a defendant's statement that he would have rejected a plea offer but for counsel's deficient performance.

{¶ 26} Bozso has not presented any contemporaneous evidence that avoiding deportation motivated his decisionmaking process at or around the time he entered his guilty pleas. Unlike the defendant in *Lee*, Bozso did not appear at the hearing on his motion to withdraw his guilty plea. Nor did he call any witnesses. According to Bozso's appellate counsel, who also represented him at the hearing on his motion to withdraw the guilty pleas, Bozso was detained by immigration officials at the time of his hearing. But counsel also concedes that he did not seek leave to transport Bozso to the hearing, and he affirmatively waived Bozso's presence at the hearing.

{¶ 27} At the evidentiary hearing, the state attempted to elicit testimony from Bozso's plea-stage counsel as to the primary concern driving Bozso's decision to enter a guilty plea. Counsel declined to answer on the grounds of attorney-client privilege. Bozso was not present at the hearing, but he had not waived the attorney-client privilege beforehand. As a result, Bozso forfeited the opportunity to present the evidence most likely to support (or contradict) his claim—the discussions he had with counsel leading to his decision to accept the plea agreement instead of going to trial.

{¶ 28} After negotiations with the state, Bozso pleaded guilty to one count of sexual battery and one count of attempted abduction. Bozso decided to plead guilty to sexual battery even though the immigration lawyer consulting with Bozso's plea-stage counsel advised them that a "sex offense conviction" constitutes a conviction for an aggravated felony that will "subject [Bozso] to mandatory detention." While the immigration attorney may have been mistaken about the possibility of relief from deportation under INA Section 212(c), he advised Bozso that he was offering a "very preliminary conclusion" that required a "more comprehensive advisement." In no uncertain terms, the attorney also advised Bozso that relief under Section 212(c) is "discretionary" and "by no means should the client believe that it is assured that he would not be ordered deported as a result of a conviction for this offense." Despite these unequivocal and specific warnings, Bozso still decided to enter a guilty plea for a deportable criminal offense.

{¶ 29} When a defendant claims that he would not have entered a guilty plea but for the ineffective assistance of counsel, the prejudice inquiry "focuses on a defendant's decisionmaking." *Lee*, ___ U.S. at ___, 137 S.Ct. at 1966, 198 L.Ed.2d 476, citing *Hill*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203. Bozso presents no contemporaneous evidence that but for his counsel's erroneous advice, he would have made a different decision.

### 3. Judicial advisement of immigration consequences

{¶ 30} We also conclude that the trial court's advisement about the immigration consequences of the defendant's plea weighs against a finding of prejudice. *Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, at ¶ 33. We do not know what actually happened at Bozso's plea hearing because we do not have a transcript. But the November 8, 2016 nunc pro tunc entry journalizing his plea indicates that the trial court gave Bozso the required advisement in R.C. 2943.031 warning Bozso of the possible immigration consequences of entering a guilty plea. Bozso's plea-stage counsel also testified at the hearing on the motion

to withdraw the pleas that the trial court read "verbatim" the required statutory advisement and was "careful" to inquire if Bozso "really understood the import of what that statutory language meant." In contrast to *Lee*, there is nothing in the record to suggest that Bozso did not understand the trial court's advisement that entering a guilty plea could result in deportation.

*4. The consequences of going to trial*

**{¶ 31}** We also consider the consequences that Bozso would have faced if he had gone to trial. *See Romero* at ¶ 30. And we conclude that this factor weighs against a finding of prejudice. Given the seriousness of the charges against Bozso, the consequences of taking a chance at trial were "markedly harsher than pleading." *Lee*, __U.S. ___, 137 S.Ct. at 1969, 198 L.Ed. 2d 476. Bozso faced 18 counts including first-degree-felony rape, gross sexual imposition, complicity, and first-degree-felony kidnapping. Some of the charges carried the possibility of life sentences with additional prison time for firearms specifications for the rape and kidnapping of Jane Doe 2. By pleading guilty to one count of sexual battery and one count of attempted abduction, Bozso significantly reduced his exposure to prison time. Given that he ultimately succeeded in avoiding a prison sentence altogether, Bozso's decision to enter a plea rather than take his chances at trial does not seem irrational.

**{¶ 32}** While Bozso argues in passing in his motion for withdrawing his guilty pleas that he would have been successful at trial, he did not present any evidence or testimony supporting that conclusory statement. The dissent speculates that the trial court might have dismissed Bozso's charges in response to one of Bozso's three motions to dismiss arguing preindictment delay or that a jury could have acquitted Bozso because DNA tests excluded Bozso as a contributor in one of his cases. The record suggests, however, that Bozso may not have been entirely confident about his likelihood of success. After filing each of his three motions to

dismiss, Bozso sought continuances to pursue plea negotiations with the state; the court's entries reflect at least seven continuances at the request of the defendant.

{¶ 33} But more importantly, none of these arguments is properly before us. Aside from a passing reference to the exclusion of Bozso's DNA in one of the cases, counsel did not present any of these arguments to the trial court in the evidentiary hearing on Bozso's motion to withdraw his pleas. This is the extent of what counsel argued would likely have happened if Bozso had gone to trial instead of pleading guilty:

> As far as the evidence in these cases, there were two alleged victims. I have not seen all the discovery. In the one matter his DNA was not involved. There were conflicting state—
>
> [Interjections by opposing counsel and the court.]
>
> Conflicting statements in the matter. There were issues surrounding the other alleged victim, your Honor. * * * It might be rational for someone who is absolutely going to be deported, is going to have no possibility of relief, to reject a plea agreement and take his chances at trial.

{¶ 34} Given our limited role as a reviewing court, "[w]e are not obligated to search the record or formulate legal arguments on behalf of the parties." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19. And we can hardly find that the trial court abused its discretion in denying Bozso's motion to withdraw his pleas based on grounds that his counsel never presented to the trial court. *See Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, at ¶ 13 (a trial court's decision on a motion to withdraw a plea is reviewed under an abuse-of-discretion standard).

**{¶ 35}** Since counsel did not present any supporting contemporaneous evidence at the hearing, we can only speculate as to the factors that went into Bozso's decisionmaking process. Accordingly, we conclude that Bozso has not met his burden of demonstrating that but for his counsel's erroneous advice as to the possibility of relief from deportation under INA Section 212(c), he would not have pleaded guilty and would have insisted on going to trial. The Eighth District erred in concluding otherwise.

## III. CONCLUSION

**{¶ 36}** Based on the record before us, we conclude that Bozso has not met his burden of establishing that he would not have entered a guilty plea but for the erroneous advice of his plea-stage counsel. We therefore reverse the Eighth District's judgment and reinstate the trial court's judgment of conviction.

Judgment reversed.

O'CONNOR, C.J., and KENNEDY, FISCHER, and DEWINE, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by STEWART, J.

_____

**DONNELLY, J., dissenting.**

**{¶ 37}** Respectfully, I dissent. When defendant-appellee, Emeric Bozso, was advised to plead guilty to criminal charges in 2016, there was a solid chance that the case against him would have ended in dismissal or acquittal. An e-mail exchange that was contemporaneous with Bozso's guilty plea demonstrated that Bozso's risk of deportation was a central concern. Bozso was erroneously led to believe that he had the possibility of discretionary relief from deportation under Section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1182(c) (repealed Sept. 30, 1996), which historically was "one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial," *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 323, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), *superseded by statute on other grounds as*

14

*stated in Nasrallah v. Barr*, ___ U.S. ___, 140 S.Ct. 1683, 207 L.Ed.2d 111 (2020). Deportation not only would cause Bozso to lose his permanent-residency status, but it also would separate him from his partner of 27 years, his five children, his friends, and his home, and from adequate medical care for his serious health conditions. Given the foregoing, it would have been abundantly rational for Bozso to choose to go to trial instead of pleading guilty. Because there is a reasonable probability that Bozso would not have pleaded guilty but for the erroneous advice he received regarding the possibility of relief from deportation, his plea-withdrawal motion should have been granted. We should affirm the judgment of the Eighth District Court of Appeals.

**{¶ 38}** If not through outright affirmance, this case should be resolved through dismissal as having been improvidently allowed. Now that we have fully examined the merits of this case, it is clear that its consideration by this court should have ended after we released our decision in *State v. Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404. In *Romero*, we provided valuable guidance regarding the standards that apply when a noncitizen criminal defendant seeks to withdraw a guilty plea based on the claim that defense counsel misinformed the defendant about the immigration consequences of the plea. In this case, the Eighth District Court of Appeals applied the very standards that we later promoted in *Romero*: it rejected the notion that a trial court can automatically cure the prejudice arising from defense counsel's misinformation with a general advisement pursuant to R.C. 2943.031(A) and correctly noted that the reasonableness of a defendant's decision to reject a plea deal is assessed by looking at the circumstances of the defendant's case. *See Romero* at ¶ 19, 29. But the majority does not like how the Eighth District applied those standards to the specific facts of Bozso's case and has taken upon itself to provide error correction. In doing so, the majority commits rather than corrects any errors.

## I. Prejudice prong—analytical standards

{¶ 39} The prejudice prong for challenges to guilty pleas based on claims of ineffective assistance of counsel requires a defendant to "show that there is a *reasonable probability* that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Emphasis added.) *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The majority subtly moves away from the correct prejudice standard by repeatedly omitting the essential words "reasonable probability" throughout its analysis and by emphasizing that Bozso's evidence is not as good as the " 'substantial and uncontroverted' " evidence that supported the withdrawal of a guilty plea in *Lee v. United States*, ___ U.S. ___, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017). Majority at ¶ [page 14, line 12], quoting *Lee* at ___, 137 S.Ct. at 1969. A reasonable probability is simply one that is "sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The reasonable-probability standard is a lower standard than preponderance of the evidence. *See Williams v. Taylor*, 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Nix v. Whiteside*, 475 U.S. 157, 175, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). Neither substantial evidence nor stringent but-for causation are required to satisfy the prejudice prong of *Strickland*.

{¶ 40} Additionally, in the context of guilty pleas, the prejudice inquiry often centers on whether "a decision to *reject* the plea bargain would have been rational under the circumstances," (emphasis added) *Lee* at ___, 137 S.Ct. at 1968, quoting *Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). The majority flips this inquiry on its head by examining the rationality of Bozso's decision to *accept* a plea bargain. It looks like he got a pretty good deal, so what does it matter if he did not understand that he had zero chance of staying in the country? It matters quite a bit. If a defendant has been misinformed about facts that are critical to his decision to plead guilty, then his plea is not knowing,

voluntary, or intelligent, let alone rational. *See State v. Engle*, 74 Ohio St.3d 525, 528, 660 N.E.2d 450 (1996). It does not comport with due process to conclude that there was no prejudice—despite the fact that the defendant was misinformed about a critical issue—just because some of the plea terms unrelated to that issue were favorable to the defendant. Our role in this aspect of the inquiry is to determine whether rejecting a guilty plea would have been a rational choice, not whether it was the *only* rational choice or the *best* possible choice.

{¶ 41} Considering the foregoing standards, as well as the factors described in *Lee* at ___, 137 S.Ct. at 1965-1969, and *Romero*, 156 Ohio St.3d 468, 2019-Ohio-1839, 129 N.E.3d 404, at ¶ 29-33, Bozso's decision to reject the plea bargain offered by the state would have been rational under the totality of the specific circumstances of his case. Bozso presented enough evidence to undermine confidence in his guilty plea, and thus he has shown that there is a reasonable probability that he would not have entered a guilty plea but for the erroneous advice he received.

## II. Factors under *Lee* and *Romero*

{¶ 42} As the majority has already described, there are circumstances that are particularly important to consider when determining whether a noncitizen defendant has demonstrated prejudice resulting from counsel's erroneous advice about the immigration consequences of a guilty plea. The factors that should be considered among the totality of the circumstances are the defendant's ties to the United States, the importance that the defendant placed on avoiding deportation, judicial advisement of immigration consequences, and the consequences of going to trial. *Romero* at ¶ 29-33; *see also Lee*, ___ U.S. at ___, 137 S.Ct. at 1965-1969, 198 L.Ed.2d 476. The totality of these factors weighs strongly in Bozso's favor.

### A. Connections to the United States

{¶ 43} The majority aptly notes the strong ties that Bozso has with the United States. He was admitted to the United States as a refugee from Romania in

1986 when he was 21 years old, and he has lived in the United States almost all of his adult life. He has many ties to the United States that he lacks in Romania, including his partner of 27 years, his five children, and friends. I have no quarrel with the majority regarding this first factor, but I disagree that it is the only factor that weighs in Bozso's favor.

### B. The importance placed on avoiding deportation

{¶ 44} When a noncitizen defendant claims that he would not have entered a guilty plea but for the erroneous deportation information that he received, that claim must be backed up by more than a bald, post hoc assertion. *See Lee* at ___, 137 S.Ct. at 1967. But a defendant cannot be expected to make a record of the fact that he has been misinformed about a crucial issue at the time he is operating under that misinformation. Thus, Bozso's post hoc claim does not necessarily need to be substantiated with direct, airtight evidence that was placed on the record contemporaneously with his plea proceeding, which in and of itself proves that the erroneous deportation information was the determinative factor in his plea. Instead, it must be possible for Bozso to make a showing of prejudice based on circumstantial contemporaneous evidence that tends to support the conclusion that he placed special importance on deportation-relief eligibility when deciding whether to plead guilty. *See Lee* at ___, 137 S.Ct. at 1965-1966, discussing *Hill*, 474 U.S. at 60, 106 S.Ct. 366, 88 L.Ed.2d 203.

{¶ 45} In support of his motion to withdraw his guilty plea, Bozso presented evidence that was contemporaneous with his 2016 criminal proceedings and that demonstrated that his chances of relief from deportation were of utmost concern. On September 21, 2016, the morning of what was intended to be the final pretrial for Bozso's case, his defense counsel e-mailed the immigration attorney with whom Bozso had consulted. That e-mail read, in part:

> I referred this cold case rape non-citizen defendant to you for your opinion as to what I could plead him to and keep him in the country. I know you met with him and we have a final pretrial today and I thought I would get your opinion but have heard nothing. * * * Can you please call me on my cell or text me or email me ASAP.

{¶ 46} The immigration attorney responded that the offenses would definitely cause Bozso to be placed in deportation proceedings. But the immigration attorney's conclusion, albeit "very preliminary," was that "the client would have some relief available to him. Specifically, [INA Section] 212(c) relief," based on the dates on which the offenses were allegedly committed. The attorney cautioned that relief from deportation was not guaranteed under INA Section 212(c) and instead was at the discretion of the court. The immigration attorney's e-mail concludes by stating, "I will supply a more comprehensive advisement for you shortly." But he never provided the promised comprehensive advisement to Bozso's defense attorney.

{¶ 47} The majority indicates that the foregoing e-mail exchange does not constitute adequate contemporaneous evidence when compared to *Lee* and emphasizes that the evidence in *Lee* was "backed by substantial and uncontroverted evidence," *id.*, ___ U.S. at ___, 137 S.Ct. at 1969, 198 L.Ed.2d 476. But the object of *Lee* was not to set a standard amount of contemporaneous evidence that would be enough to establish a noncitizen defendant's claim that immigration consequences were important to a defendant. Rather, *Lee* disabused us of the notion that a claim fails per se if the defendant has almost no chance of prevailing at the criminal trial and clarified that plea-withdrawal motions by noncitizen defendants are decided on a case-by-case basis, by looking at the totality of the circumstances and by focusing on the individual defendant's decisionmaking process. *Lee* at ___,

137 S.Ct. at 1966.  Even so, the contemporaneous evidence in Bozso's case is in fact stronger than the evidence in *Lee.*

{¶ 48} Although there was plenty of ad hoc testimony supporting Lee's motion to withdraw his guilty plea, only one piece of evidence was actually created contemporaneously with the criminal proceeding leading up to Lee's convictions: the plea colloquy, during which Lee said he did not understand the judge's explanation that there were potential deportation consequences of pleading guilty. *See id.* at ___, 137 S.Ct. at 1968.  The fact that a defendant does not understand part of a plea colloquy in no way proves that the misunderstood portion was actually important to the defendant, let alone important enough to be the decisive factor in the defendant's agreement to a plea deal.  In Bozso's case, by contrast, his contemporaneous evidence directly addressed the fact that the possibility of avoiding deportation was a key factor that Bozso considered leading up to his decision to agree to a plea deal.  It does not seem too far a stretch to imagine that immigration consequences would be a pivotal factor in any noncitizen's decision to plead guilty to a criminal offense, given that "[d]eportation can be the equivalent of banishment or exile," *Delgadillo v. Carmichael*, 332 U.S. 388, 391, 68 S.Ct. 10, 92 L.Ed. 17 (1947).

{¶ 49} The majority is able to dismiss Bozso's contemporaneous evidence regarding the importance he placed on immigration consequences by shifting the focus to the uncertainty of the immigration attorney's advice in response to Bozso's concerns.  And in focusing on that response, the majority indicates that Bozso could not possibly rely on the mere chance of "discretionary" relief from deportation as a reason to enter a plea deal.  But if we are "asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking." *Lee* at ___, 137 S.Ct. at 1967.  It has already been established that there is a substantive difference between "facing possible deportation and facing certain deportation." *St. Cyr*, 533

U.S. at 325, 121 S.Ct. 2271, 150 L.Ed.2d 347. Just as the rationality of Lee's decision to reject a plea agreement would not have turned solely on the slim likelihood of his success on the merits at trial, *Lee* at ___, 137 S.Ct. at 1966, here we should not say that Bozso's decision would have turned solely on his likelihood of success in an application for discretionary relief from deportation.

{¶ 50} Further, if the advice to Bozso regarding the applicability of INA Section 212(c) had been correct, he would have had far more than a slim, highly improbable likelihood of obtaining relief from deportation. In the era when it still applied, relief was granted under Section 212(c) so frequently that "preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *St. Cyr* at 323.

{¶ 51} The immigration advice upon which Bozso relied has been repeatedly recognized as having rightfully been pivotal to a noncitizen's decision to accept a plea deal. *See Padilla*, 559 U.S. at 368-369, 130 S.Ct. 1473, 176 L.Ed.2d 284. The majority is simply incorrect that a guilty plea in the face of such advice indicates that Bozso did not care about being deported. Given the advice Bozso received, as well as the fact that he asked for immigration advice in the first place, this second factor weighs strongly in Bozso's favor.

### C. Judicial advisement of immigration consequences

{¶ 52} The trial court's advisement pursuant to R.C. 2943.031(A) does not weigh for or against a finding that Bozso was prejudiced by his counsel's erroneous advice. In fact, the advisement is irrelevant given the specific facts of Bozso's case.

{¶ 53} The trial court's verbatim recitation of R.C. 2941.031(A) would only have informed Bozso that "conviction of the offense to which you are pleading guilty * * * may have the consequences of deportation." It is undisputed that Bozso was already aware that commencement of deportation proceedings against him was not only a possibility, but indeed a certainty. The decisive information relevant to

his plea, which is not addressed in R.C. 2943.031(A), was that Bozso had the possibility of obtaining *relief* from deportation pursuant to INA Section 212(c) once deportation was ordered. There was no possibility of curing counsel's erroneous advice to Bozso through the trial court's mere recitation of R.C. 2943.031.

### D. The consequences of going to trial

{¶ 54} Although the final factor in this analysis looks to the potential consequences of going to trial, the majority erroneously jumps straight to the consequences of being convicted. The majority's analysis glosses over the fact that there are potential consequences of going to trial besides conviction. It does so by focusing on the context of *Lee*, in which it was all but certain that the consequence of going to trial was a conviction with a full sentence. But that is not the context here. And the context of the particular case being reviewed is extremely important. Although the defendant's decisionmaking "may not turn *solely* on the likelihood of conviction after trial," (emphasis added) *Lee*, ___ U.S. at ___, 137 S.Ct. at 1966, 198 L.Ed.2d 476, the likelihood of conviction or acquittal is not irrelevant. It is definitely to be considered, "because defendants obviously weigh their prospects at trial in deciding whether to accept a plea," *id.* at ___, 137 S.Ct. at 1966.

{¶ 55} In 2016, the state brought two sets of rape charges against Bozso just a few days short of the 20-year statute of limitations in the applicable prior version of R.C. 2901.13(A)(3). Many charges of this type in Cuyahoga County originate from so-called "cold cases," in which there was an unknown perpetrator at the time of the offense whose DNA was eventually linked to the offense when the victim's rape kit was finally tested. *See State v. Dixon*, 2015-Ohio-3144, 40 N.E.3d 601, ¶ 13 (8th Dist.); *State v. Jones*, 2015-Ohio-2853, 35 N.E.3d 606, ¶ 18 (8th Dist.), *judgment reversed by State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688; *State v. Powell*, 2016-Ohio-1220, 61 N.E.3d 789, ¶ 5 (8th Dist.). But that is not how Bozso's charges originated.

{¶ 56} In the two rape cases alleged against Bozso, the accusers, T.C. and R.R., immediately reported their allegations to the police in 1996. They both identified Bozso as the assailant, and the police had contacted Bozso in both instances, but the state chose not to prosecute the cases for almost two decades. It appears that the state finally performed DNA testing on the 1996 rape kit from R.R. around 2013 and on the 1996 rape kit from T.C. in 2016. The DNA tests matched other people and *excluded* Bozso as a contributor.

{¶ 57} Soon after the charges were initiated against Bozso in 2016, he filed a motion to dismiss due to prejudicial preindictment delay. Nothing in the record indicates that the trial court ruled on his motion. He filed second and third motions to dismiss, again with no indication of a ruling. According to the record before this court, all of his motions to dismiss due to preindictment delay were still pending and had not received consideration by the trial court or even a hearing when Bozso entered his plea.

{¶ 58} Additionally, it is not clear from the record whether the alleged victims even planned to participate in the prosecution 20 years after they made their allegations. In an interview on January 6, 2015, investigators asked R.R. if she wanted to pursue charges against Bozso and she responded only that she would consult with her husband. Nothing in the record indicates that R.R. participated any further in the investigation or subsequent prosecution. T.C. did provide information to the police during an interview on May 13, 2016, shortly before charges were filed. But investigators were not able to reach the witnesses she identified. After Bozso pleaded guilty, neither R.R. nor T.C. responded to the state's request for victim-impact statements.

{¶ 59} Given this context of the state's prosecution of its case against Bozso, there was a distinct possibility that Bozso's charges could have been dismissed or that he could have been acquitted had he proceeded to a jury trial. Was dismissal or acquittal a sure thing? Certainly not. But there were strong

indicators that the state would have had a tough time prevailing if the charges against Bozso had proceeded to trial. The plea offer alone is telling. .

{¶ 60} Bozso originally faced 18 charges that included rape, complicity, sexual battery, gross sexual imposition, kidnapping, and attempted abduction, along with a few firearm specifications. Five months after bringing the charges, the state offered to drop almost all of these charges in exchange for Bozso's guilty plea to amended third-degree-felony counts of sexual battery and attempted abduction. Bozso received suspended one-year prison sentences and was ordered to serve two years of probation on each count. The plea offer by the state is not the kind of plea offer provided when the state has any confidence that it could win the case. It is the kind of plea offer the state provides when it is confident that it will lose and wants to see if it can cut its losses by making a coercively lenient offer.

{¶ 61} Because Bozso had a realistic chance of prevailing in his case either at the motions stage or the trial stage, this fourth factor weighs heavily in Bozso's favor.

### III. Conclusion

{¶ 62} The record in this case substantiated Bozso's plea-withdrawal averment that he "would not have pled guilty to Sexual Battery and Attempted Abduction had he known that relief from immigration consequences pursuant to INA §212(c) was wholly unavailable to him." Of the four factors that are particularly important to a determination of prejudice from erroneous advice given to a noncitizen defendant about the immigration consequences of a guilty plea, one is irrelevant and the other three weigh decidedly in Bozso's favor. It would have been rational for Bozso to have rejected the state's plea offer, and there is a reasonable probability that, but for counsel's errors, Bozso would not have pleaded guilty and would have chosen to move forward in his case toward trial. Accordingly, I would affirm the judgment of the Eighth District Court of Appeals.

STEWART, J., concurs in the foregoing opinion.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Ochocki, Assistant Prosecuting Attorney, for appellant.

Daniel J. Misiewicz, for appellee.

_____